## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAKE CHARLES DIVISION

| | | |
|---|---|---|
| STOUT CONRAD, LLC | * | 2:24-CV-00171-JDC-TPL |
| Plaintiff | * | |
| | * | JUDGE JAMES D. CAIN, Jr. |
| v. | * | |
| | * | MAG. JUDGE THOMAS |
| KERR-MCGEE OIL & GAS ONSHORE LP | * | LEBLANC |
| Defendant | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * *

## MEMORANDUM IN SUPPORT OF KERR-MCGEE OIL & GAS ONSHORE LP AND ANADARKO US OFFSHORE LLC'S MOTION TO DISMISS

## TABLE OF CONTENTS

I.      INTRODUCTION................................................................4

II.     BACKGROUND .................................................................5

III.    LEGAL STANDARD ..........................................................7

IV.     LAW AND ARGUMENT .....................................................8

        1.      BREACH OF THE SECTION 34 LEASE .........................8

        2.      BREACH OF EXPRESS REMEDIATION OBLIGATIONS..........................8

        3.      BREACH OF SERVITUDE OBLIGATIONS .................9

        4.      CIVIL FRUITS .........................................................10

        5.      UNJUST ENRICHMENT ..........................................11

        6.      FAILURE TO PROVIDE NOTICE UNDER LOUISIANA CIVIL
                CODE ARTICLE 2688 ...............................................11

        7.      STANDALONE CLAIMS UNDER LOUISIANA REVISED
                STATUTES § 30:29 ("ACT 312") ..............................12

        8.      FRAUD ...................................................................13

1

9.      LAND LOSS, SUBSIDENCE, AND THE COST OF
        BACKFILLING ........................................................................ 14

10.     SECTION 324A OF THE RESTATEMENT (SECOND) OF
        TORTS .................................................................................... 14

11.     STRICT LIABILITY UNDER LOUISIANA CIVIL CODE
        ARTICLE 667 ......................................................................... 15

        a.      Post-1996 Art. 667 Claims ........................................ 16

        b.      Pre-1996 Art. 667 Claims ......................................... 16

12.     MINERAL CODE ART. 11 STRICT LIABILITY CLAIMS .................... 18

13.     CONTINUING TORT, CONTINUING TRESPASS, AND
        CONTINUING NUISANCE ........................................................ 19

14.     THIRD-PARTY BENEFICIARY CLAIMS ................................. 21

V.      CONCLUSION ................................................................................ 22

## TABLE OF AUTHORITIES

**Cases**

*Ainsworth v. Shell Offshore, Inc.*, 829 F.2d 548, 550 (5th Cir. 1987) ......................................... 17

*Alford v. Anadarko E&P Onshore, LLC,* 135457, 2014 WL 1612454 (E.D. La. Apr. 22, 2014) ...................................................................................................................... 20

*Alford v. Chevron U.S.A. Inc.*, 13 F. Supp. 3d 581, 599 (E.D. La. 2014) ............ 10, 11, 12, 13, 14

*Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) ................................................................ 7, 8

*Barrett v. Dresser, LLC,* No. 1:20-CV-01346, 2021 U.S. Dist. LEXIS 2173 ............................... 11

*Bartlett v. Browning-Ferris Indus., Chem. Servs., Inc.*, 96-218, p. 3 (La. App. 3 Cir. 11/6/96); 683 So.2d 1319 ....................................................................................... 17

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ...................................................... 7

*Block v. Reliance Ins. Co.*, 433 So. 2d 1040, 1044 (La. 1983) ....................................... 12

*Bujol v. Entergy Servs.*, 03-0492 (La. 01/19/06); 922 So.2d 1113 ............................... 15

2

*CNG Producing Co. v. Columbia Gulf Transmission Corp.*, 709 F.2d 959, 962 (5th Cir. 1983) .................................................................................................................. 17

*Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992)...................................... 7

*Hawkins v. Evans Cooperage Co.*, 766 F.2d 904, 907 (5th Cir. 1985) ......................... 17

*Hogg v. Chevron USA, Inc.,* 2009-2632 (La. 07/06/10); 45 So. 3d 991 ................................ 19, 20

*Inabnett v. Exxon Corp.*, 93-0681 (La. 09/06/94); 642 So.2d 1243 .............................. 17

*Kling Realty Co. v. Chevron USA, Inc.,* 575 F.3d 510 (5th Cir. 2009) .............................. 20

*Levet v. Exxon Mobil Corp.*, No. CV 6:15-2069, 2015 WL 9685555, at *13 (W.D. La. Nov. 19, 2015) ................................................................................................. 10, 20

*Marin v. Exxon Mobil Corp.*, 09-2368 (La. 10/19/10); 48 So. 3d 234 ...................... 9, 19

*Morgan Plantation, Inc. v. Tenn. Gas Pipeline Co.*, LLC, No. 16-cv-1620, 2017 U.S. Dist. LEXIS 178782.......................................................................................... 16

*Petry v. R360 Envtl. Sols. of La. L L C*, No. 2:20-CV-00820, 2020 U.S. Dist. LEXIS 206643, at *3 (W.D. La. Nov. 4, 2020) ......................................................... 7, 8

*Prairie Land Co. v. ConocoPhillips Co.*, No.: 20-CV-00748, 2020 WL 5647300, at *5 (W.D. La. Sept. 22, 2020) ..................................................................................... 10

*Rich Land Seed Co. v. BLSW Pleasure Corp.*, 2022 U.S. Dist. LEXIS 106704 (W.D. La. May 31, 2022).............................................................................................. 10

*Ritchie Grocer Co. v. 2H, Inc.*, 2015 U.S. Dist. LEXIS 173572 (W.D. La. Sep. 16, 2015)......... 12

*State v. La. Land & Expl. Co.*, 2020-00685 (La. 06/30/21); 347 So. 3d 684 ................................ 9

*Terrebonne Par. Sch. Bd. v. Castex Energy, Inc*., 04-0968 (La. 01/19/05); 893 So.2d 789........... 9

*Tureau v. 2H, Inc.*, 2015 U.S. Dist. LEXIS 103974 (W.D. La. Aug. 6, 2015)................ 10, 11, 12

*Ukudi v. McMoran Oil & Gas, L.L.C.*, 587 F. App'x 119 (5th Cir. 2014).................................... 17

*Wagoner v. Chevron USA Inc.,* 45,507 (La. App. 2 Cir. 8/18/10), 55 So. 3d 12.............. 11, 13, 20

*Watson v. Arkoma Dev., LLC,* No. 17-1331, 2018 U.S. Dist. LEXIS 203596 .................. 11, 13, 14

*Withrow v. Chevron USA Inc.,* No. 2:22-CV-00633, 2022 U.S. Dist. LEXIS 109949, at *9 (W.D. La. June 21, 2022).................................................. 9, 10, 11, 12, 14, 15, 17, 18, 20

*Zaveri v. Condor Petroleum Corp.,* 27 F. Supp. 3d 695 (W.D. La. 2014) .................................. 21

3

#102134708v4

**Statutes**

Fed. R. Civ. Proc. 12 ........................................................................................................... 7

Fed. R. Civ. Proc. 8 ..................................................................................................... 4, 7, 8

Fed. R. Civ. Proc. 9 ................................................................................................. 4, 13, 14

La. Civ. Code art. 1978 ................................................................................................. 4, 21

La. Civ. Code art. 2298 ................................................................................................. 4, 11

La. Civ. Code art. 2688 ............................................................................................. 4, 11, 12

La. Civ. Code art. 486 ............................................................................................. 4, 10, 11

La. Civ. Code art. 551 ................................................................................................. 4, 10

La. Civ. Code art. 667 .............................................................................................. passim

La. R.S. § 30:29 ........................................................................................................ 5, 9, 12

La. R.S. § 31:11 ...................................................................................................... 4, 5, 18

**Other Authorities**

Acts 2004, No. 821, § 1, eff. Jan. 1, 2005 ................................................................... 4, 12

**Treatises**

Restatement of Torts 2d Section 324A .................................................................... 4, 5, 14

I.    INTRODUCTION

Plaintiff, Stout Conrad LLC, fails to allege sufficient facts to state numerous asserted claims to relief. Considering the insufficiency of Plaintiff's factual allegations, Kerr-McGee Oil & Gas Onshore LP and Anadarko US Offshore LLC (collectively "KMOGO" or "Defendant") seeks dismissal of the following claims: (1) breach of the Section 34 Lease, (2) breach of express remediation obligations, (3) breach of servitude obligations, (4) civil fruits, (5) unjust enrichment, (6) failure to provide notice under Louisiana Civil Code Art. 2688, (7) standalone

4

claims under Louisiana Revised Statute § 30:29 ("Act 312"), (8) fraud, (9) land loss, subsidence, and the cost of backfilling, (10) Section 324A of the Restatement (Second) of Torts, (11) strict liability under Louisiana Civ. Code Art. 667, (12) Mineral Code Art. 11 strict liability claims, (13) continuing tort, continuing nuisance, and continuing trespass, and (14) third-party beneficiary claims.

## II.    BACKGROUND

In this "legacy" or "Act 312"[1] lawsuit, Stout Conrad, LLC claims KMOGO's "oil and gas exploration and production and related activities" contaminated three tracts of land it allegedly owns in the Kinder Oil & Gas Field located in Allen Parish (the "Property").[2] The Complaint generally alleges that KMOGO operated or constructed various oil and gas facilities, such as pits, wells, sumps, flowlines, pipelines, tank batteries, wellheads, measuring facilities, separators, and injection facilities.[3] Plaintiff alleges that it has "suffered damages resulting from the improper disposal of oilfield wastes in unlined earthen pits, which were constructed by the defendant on or near the Property during the course of oil and gas exploration and production activities."[4] Plaintiff further alleges that "leaks, spills, and other surface and subsurface discharges . . . from wells, pipelines, tank batteries, gas plants, and other equipment or facilities have further polluted the surface and subsurface of plaintiff's Property."[5]

---

[1] Act 312 is codified at La. R.S. § 30:29.

[2] *See* Complaint for Damages, Rec. Doc. 1. (Plaintiff's complaint generally alleges that it has "suffered damages resulting from the improper disposal of oilfield wastes in unlined earthen pits, which were constructed by the defendant on or near the Property during the course of oil and gas exploration and production activities" and that "leaks, spills, and other surface and subsurface discharges . . . from wells, pipelines, tank batteries, gas plants, and other equipment or facilities have further polluted the surface and subsurface of plaintiff's Property").

[3] *Id.*, at ¶ 6.

[4] *Id.*, at ¶ 11.

[5] *Id.*

#102134708v4

Plaintiff attached two spreadsheets exhibits to the Complaint, a "Lease Abstract" and an "Operator History."[6] The Lease Abstract indicates that, in 1952, KMOGO's predecessor Sun Oil Company ("Sun") took two oil and gas leases covering the Property.[7] On June 16, 1952, Sun took the first lease on the portion of the Property located in Sections 26 and 27, T6S, R6 (the "June 16 Lease").[8] The Operator History suggests Sun drilled 12 wells under the June 16 Lease between 1954 and 1981.[9] The Operator History further alleges that Sun assigned its interest in the Property to an unrelated non-defendant McGowan Working Partners in 1993.[10] Plaintiff subsequent filed a First Supplemental and Amending Complaint clarifying that it does not allege Defendant is a successor to McGowan Working Partners.[11] McGowan Working Partners reportedly continues to operate the Sun wells.[12]

Plaintiff's Lease Abstract also indicates that, on June 26, 1982, Sun took a separate oil and gas lease, on the portion of the Property located in Section 34, Township 6 South, Range 6 West (the "Sec. 34 Lease").[13] The Operator History does not reflect that Sun, or anyone else, drilled any wells or conducted operations in Section 34.[14]

Thirty years after KMOGO assigned its operations to McGowan Working Partners, the Plaintiff filed this lawsuit. The Complaint sets out numerous overlapping causes of action

---

[6] *Id.* at Exs. B and C.

[7] *Id.* at Ex. C.

[8] *Id.*

[9] *Id.* at Ex. B, Operator History (although the Operator History identifies 17 LDNR serial numbers, three of the numbers identified were "dual completions" that utilize an existing wellbore and another two wells were drilled by other operators).

[10] *Id.*

[11] Rec. Doc. 16-3.

[12] *Id.*

[13] *Id.* at Ex. C.

[14] *Id.*

#102134708v4

seeking recovery for this alleged damage, including breach of express and implied lease obligations, negligence, trespass, strict liability, civil fruits, unjust enrichment, and violations of the Mineral and Civil Codes.[15] As explained below, the Court should dismiss Plaintiff's claims related to the Sec. 34 Lease and should further dismiss numerous improperly pled theories of recovery for failure to state a claim upon which relief can be granted.

## III.   LEGAL STANDARD

"Federal Rule of Civil Procedure 12(b)(6) allows dismissal of a complaint when it fails to state a claim upon which relief can be granted."[16] To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'"[17] A claim is facially plausible when the plaintiff alleges facts that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[18] "In order to avoid dismissal for failure to state a claim, a plaintiff must plead specific facts, not mere conclusory allegations. . . ."[19] "[T]he complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial."[20]

"Under Rule 8 of the Federal Rules of Civil Procedure, the pleading standard does not require a complaint to contain 'detailed factual allegations,' but it demands 'more than an

---

[15] *Id.* at ¶¶ 66-137.

[16] *Petry v. R360 Envtl. Sols. of La. L.L.C.*, No. 2:20-CV-00820, 2020 U.S. Dist. LEXIS 206643, at *3 (W.D. La. Nov. 4, 2020).

[17] *Id.* at *4 (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[18] *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

[19] *Petry,* 2020 U.S. Dist. LEXIS 206643, at  *3 (*quoting Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992)).

[20] *Id.* at *4 (*quoting Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995)).

unadorned, the defendant-unlawfully-harmed-me accusation.'"[21] Nor does Rule 8 "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."[22]

## IV.    LAW AND ARGUMENT

### 1.   BREACH OF THE SECTION 34 LEASE

The Court should dismiss Plaintiff's claims related to the Section 34 Lease as Plaintiff has failed to allege that KMOGO ever conducted operations under the Lease. Plaintiff's Lease History contains the only reference to the Section 34 Lease:[23]

Property:Stout- Conrad LLC
Lands in Sections 26, 27 & 34, T6S, R5W
Allen Parish
Lease: 135018

| Lease # | B/VPg | Date | Grantor | Grantee | Notes |
|---|---|---|---|---|---|
| 135018 | 119/284 | 10/26/57 | The Stout Realty Company | Sun Oil Company | OGML: All of Subject lands in Section 34 |
| | | | | | |
| | | | | | |

However, the Plaintiff's accompanying Operator History does not identify *any* wells or other operations that as taking place in Section 34. The Complaint contains no other allegations specifying how KMOGO violated the Section 34 Lease. KMOGO cannot owe Plaintiff a remediation obligation when no operations took place. Accordingly, the Court should dismiss Plaintiff's claims related to the Section 34 Lease.

### 2.   BREACH OF EXPRESS REMEDIATION OBLIGATIONS

Plaintiff's Complaint fails to adequately plead that KMOGO breached an express remediation obligation contained in any mineral or surface lease. Plaintiff generally claims that defendants "have a contractual obligation under the applicable oil, gas, and mineral leases, and under the applicable surface or predial leases . . . to restore plaintiff's property to its original

---

[21] *Petry*, 2020 U.S. Dist. LEXIS 206643, at *4 (*quoting Twombly,* 550 U.S. at 555).

[22] *Ashcroft*, 556 U.S. at 678.

[23] Complaint at Ex. B.

#102134708v4

condition."[24] However, Plaintiff fails to identify any express restoration obligation for restoration in the alleged leases applicable to the defendants.

Absent an express contractual provision imposing restoration duties, a lessee cannot be required to restore the property to its original condition.[25] The Louisiana Supreme Court recently explained the interplay of this substantive law with the procedure provided by Act 312, stating "Act 312 is clear and unambiguous: … outside of an express contractual provision, Act 312 does not allow for remediation damages in excess of those required to fund the court adopted remediation plan."[26] By definition, the court ordered remediation plan is based on "applicable state regulations," and not "original condition."[27]

Plaintiff has failed to allege any facts supporting its claim for contractual remediation damages based on an express contractual condition. Plaintiff's Lease History does not contain any suggestion that the leases identified in the summary contain express remediation language. This Court recently dismissed a plaintiff's express remediation claims in a recent Act 312 case on identical facts in *Withrow v. Chevron USA Inc.*, 2022 U.S. Dist. LEXIS 109949 (W.D. La. June 21, 2022), and it should reach the same result here.

### 3. BREACH OF SERVITUDE OBLIGATIONS

Plaintiff also fails to state a claim for breach of servitudes. Plaintiff's claims that KMOGO breached personal and mineral servitudes "to the extent such servitudes exist."[28]

---

[24] *Id.* at ¶ 26.

[25] *Marin v. Exxon Mobil Corp.*, 09-2368 (La. 10/19/10); 48 So. 3d 234, 257-58 (finding no obligation to restore beyond lease conditions where mineral leases at issue did not contain any express restoration provisions); *Terrebonne Par. Sch. Bd. v. Castex Energy, Inc.*, 04-0968 (La. 01/19/05); 893 So.2d 789, 801 ("in the absence of an express lease provision, the lessee is not responsible for damages which are inflicted without negligence upon the lessor's property in the court of necessary drilling operations.").

[26] *State v. La. Land & Expl. Co.*, 2020-00685 (La. 06/30/21); 347 So. 3d 684, 693.

[27] La. R.S. 30:29(C)(1).

[28] Complaint at ¶ 37.

9

#102134708v4

But Plaintiff never alleges that KMOGO held a servitude on the Property in the Complaint or the accompanying Lease History. This Court dismissed the same speculative claims in *Withrow*, reaching the same result as numerous other Louisiana Courts.[29]  The Court should reach the same conclusion in this case and dismiss Plaintiff's claim for breach of servitudes.

### 4.   CIVIL FRUITS

Plaintiff fails to state a claim against Kerr-McGee for civil fruits under Louisiana Civ. Code article 486 because the economic benefits derived from storage of waste are not civil fruits.[30] Plaintiff alleges that "Defendant has derived substantial economic benefits from this storage in that its use of the subsurface of the plaintiff's lands has allowed it to avoid the substantial costs and expenses associated with the proper disposal of this toxic pollution and waste."[31]

This Court previously dismissed identical claims in *Withrow*, holding "Plaintiff is not seeking recovery of 'profits earned' but rather 'costs avoided.'"[32] That is why Courts in

---

[29] *Withrow*, 2022 U.S. Dist. LEXIS 109949 at *11. *See also Alford v. Chevron U.S.A. Inc.*, 13 F. Supp. 3d 581, 599 (E.D. La. 2014); *Prairie Land Co. v. ConocoPhillips Co.*, No.: 20-CV-00748, 2020 WL 5647300, at *5 (W.D. La. Sept. 22, 2020); *Rich Land Seed Co. v. BLSW Pleasure Corp.*, 2022 U.S. Dist. LEXIS 106704 (W.D. La. May 31, 2022), at *4; *Tureau v. 2H, Inc.*, 2015 U.S. Dist. LEXIS 103974 (W.D. La. Aug. 6, 2015), at *5; *Levert v. Exxon Mobil Corp.*, No. CV 6:15-2069, 2015 WL 9685555, at *13 (W.D. La. Nov. 19, 2015), report and recommendation adopted, No. CV 6:15-2069, 2016 WL 112678 (W.D. La. Jan. 8, 2016).

[30] Article 486 provides that "[a] possessor in bad faith is bound to restore to the owner the fruits he has gathered, or their value, subject to his claim for reimbursement of expenses." La. Civ. Code art. 486. "Fruits" are defined as "things that are produced by or derived from another thing without diminution of its substance," while "civil fruits" are "revenues derived from a thing by operation of law or by reason of a juridical act, such as rentals, interest, and certain corporate distributions." La. Civ. Code art. 551.

[31] Complaint at ¶ 36.

[32] *Withrow*, 2022 U.S. Dist. LEXIS 109949 at *9

Louisiana routinely dismiss similar claims in Act 312 cases at the pleading stage.[33] Accordingly, this Court should dismiss Plaintiff's claim for civil fruits arising under La. Civ. Code Art. 486.

### 5.  UNJUST ENRICHMENT

Plaintiff fails to state a claim for unjust enrichment under La Civ. Code Art. 2298.[34] "[U]njust enrichment is a remedy of 'last resort' and is only available to fill a gap in the law."[35] "Thus, if a plaintiff pleads a legal cause of action in his complaint, he may not also assert a claim for unjust enrichment, because the latter is precluded by the availability of the former."[36] In *Withrow*, this Court dismissed another Act 312 Plaintiff's claims, stating "Plaintiff admits that since viable tort, contract, and Mineral Code claims have been asserted, it cannot proceed under a theory of unjust enrichment."[37] The Court should reach the same result here and dismiss Plaintiff's claim for unjust enrichment with prejudice.

### 6.  FAILURE TO PROVIDE NOTICE UNDER LOUISIANA CIVIL CODE ARTICLE 2688

Plaintiff further fails to state a claim against KMOGO under La. Civ. Code Art. 2688. The Complaint fails to identify any lease with KMOGO, let alone a lease in effect when KMOGO operated on the Property, entered after the Legislature enacted Art. 2688 in 2005. Art.

---

[33] *See Wagoner v. Chevron USA Inc.,* 45,507 (La. App. 2 Cir. 8/18/10), 55 So. 3d 12, 27 (holding that any potential economic benefit in disposing of/storing wastes or byproducts on the property is not a civil fruit because "[n]othing was produced by or derived from the property as a result of the storage/disposal of oilfield waste, and there were no revenues, such as rentals, interest or a corporate distribution, derived from the property by virtue of the storage/disposal of oilfield waste."). *See also Alford*, 13 F. Supp. 3d at 604; *Cedar Lodge Plantation, LLC v. CSHV Fairway View I, LLC*, No. 13-129, 2017 WL 2362849, at *3 n.9 (M.D. La. May 31, 2017); *Barrett v. Dresser, LLC,* No. 1:20-CV-01346, 2021 U.S. Dist. LEXIS 2173, at *19 (W.D. La. Jan. 6, 2021); *Watson v. Arkoma Dev., LLC,* No. 17-1331, 2018 U.S. Dist. LEXIS 203596, at *35 (W.D. La. Nov. 15, 2018); *Tureau v. 2H, Inc.,* No. 13-cv-02969, 2015 U.S. Dist. LEXIS 100942 (W.D. La. June 18, 2015), at *12.

[34] Complaint at ¶ 39.

[35] *Alford*, 13 F. Supp. 3d at 609.

[36] *Id.*

[37] *Withrow v. Chevron USA Inc.*, 2022 U.S. Dist. LEXIS 109949 (W.D. La. June 21, 2022), at *18.

#102134708v4

2688 requires lessees to notify lessors when the property has been damaged or requires repair.[38] It is well-established in Louisiana that "[l]aws existing at the time a contract is entered into are incorporated into and form a part of the contract as though expressly written."[39] In *Withrow*, this Court dismissed a landowner's Art. 2688 claim where the plaintiff did not allege any claims involving leases executed after 2005.[40] The Court should follow the same reasoning and dismiss Plaintiff's Art. 2688 claim as Plaintiff's have not alleged that KMOGO breached any lease entered in or after 2005.

### 7. STANDALONE CLAIMS UNDER LOUISIANA REVISED STATUTES § 30:29 ("ACT 312")

Plaintiff asserts an independent claim under Act 312 "[t]o the extent plaintiff does not have a right of action under private law to seek the damages claimed in this complaint."[41] Although this Court did not dismiss similar claims in *Withrow*, KMOGO urges the Court to dismiss Plaintiff's claim *to the extent* Plaintiff asserts a substantive right of action to recover under Act 312.

By its express terms, Act 312 "shall not be interpreted to create any cause of action."[42] As this Court pointed out in *Withrow*, "Act 312 is not a substantive amendment of the law and does

---

[38] *See* Acts 2004, No. 821, § 1, eff. Jan. 1, 2005.

[39] *Alford*, 13 F.Supp.3d at 598 *citing Block v. Reliance Ins. Co.*, 433 So. 2d 1040, 1044 (La. 1983) ("[a] statute "not in effect at the time of contracting . . . cannot be retroactively applied to alter the obligations of [a] contract, even though the act giving rise to the obligation occurs after the effective date of the statute.").

[40] *Withrow*, 2022 U.S. Dist. LEXIS 109949, at *11-12. *See also Alford*, 13 F. Supp. 3d at 598 ("Under the law as it existed in 1950, the lessees of plaintiffs' property had no duty analogous to that imposed by article 2688, and consequently those lessees have no such duty today."); *Ritchie Grocer Co. v. 2H, Inc.*, 2015 U.S. Dist. LEXIS 173572 (W.D. La. Sep. 16, 2015), at *4 ("The article was enacted in 2005 and cannot be applied retroactively to alter the obligation of any contracts with the defendants' predecessors. [(citation omitted)] As such, this claim should be dismissed."); *Tureau*, 2015 U.S. Dist. LEXIS 100942, at *17 (same).

[41] Complaint at ¶ 47.

[42] *See* La. Rev. Stat. § 30:29(H).

12

not create a cause of action or divest a plaintiff of any causes of action."[43] Accordingly, Plaintiff cannot invoke Act 312 to create a new "right of action" beyond its existing claims in tort and contract. KMOGO does not dispute that Act 312 procedurally governs Plaintiff's claims. However, Plaintiff's attempt to use Act 312 as a "catch-all" cause of action in the event its private claims fail is an impermissible attempt to convert the Act 312 procedure into a substantive right to recovery. Since Plaintiff has no independent cause of action under Act 312, the Court should dismiss this claim with prejudice.

### 8.   FRAUD

Plaintiff fails to state a claim against Kerr-McGee for fraud or concealment because Rule 9(b) of the Federal Rules of Civil Procedure requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake."[44] The Fifth Circuit "interprets Rule 9(b) strictly," and requires a plaintiff "to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent."[45]

Plaintiff has failed to satisfy this strict pleading standard. Plaintiff alleges that "defendant has engaged in acts that effectively have prevented plaintiff from availing itself of the causes of action alleged herein. These acts include fraud, ill practices, misrepresentation . . . [.]"[46] Plaintiff then goes on to allege numerous vague and conclusory "acts of fraud" that it claims the

---

[43] *Id.* at *13. *See also See Wagoner*, 55 So. 3d at 26 ("La. R.S. 30:29 is procedural, rather than substantive, and does not create a right of action in favor of landowners."); *Alford*, 13 F. Supp. 3d at 589 n.25 ("Section 30:29 merely specifies the procedures applicable to lawsuits alleging environmental damage; the substantive law is supplied by the Louisiana Civil and Mineral Codes and other applicable statutory law and jurisprudence."); *Watson, 2018 U.S. Dist. LEXIS 203596*, at *8 ("Under Louisiana law and the plain wording of the statute, La. R.S. 30:29 does not create a right of action.").

[44] *Alford v. Chevron U.S.A. Inc.*, 13 F.Supp.3d 581, 594 (E.D. La.2014)

[45] *Id.* (citing *Herrmann Holdings Ltd. v. Lucent Techs. Inc.,* 302 F.3d 552, 564–65 (5th Cir. 2002)).

[46] Complaint, ¶ 18.

#102134708v4

defendant has committed.[47] These vague and conclusory allegations, however, are insufficient to satisfy Rule 9(b)'s strict pleading standard. The court in *Alford* explained how "[c]ourts in this circuit have found virtually identical allegations of fraud to be deficient under the Fifth Circuit's interpretation of Rule 9(b)" because plaintiffs "must plead specific facts describing the fraud allegedly committed" by the defendant.[48] Therefore, consistent with Fifth Circuit precedent, the Court should dismiss Plaintiff's claim for fraud with prejudice.

### 9.  LAND LOSS, SUBSIDENCE, AND THE COST OF BACKFILLING

In pleading claims for land loss, subsidence, and backfilling of canals, Plaintiff again merely makes the conclusory claim that it is entitled to "damages for land loss and subsidence damages, and the cost of backfilling of canals and other excavations."[49] Plaintiff, however, fails to allege a single fact, nor cite any law, in support of these allegations. Moreover, the Complaint does not mention canals or other excavations on the Property and is devoid of any allegations suggesting that the defendant engaged in any activity that would cause land loss or subsidence. This Court has followed many other courts in dismissing these claims based on identical allegations.[50] Accordingly, KMOGO requests that the Court dismiss Plaintiff's claims for land loss, subsidence, and backfilling of canals.

### 10. SECTION 324A OF THE RESTATEMENT (SECOND) OF TORTS

Plaintiff further alleges that "defendant is liable to plaintiff under the provisions of Section 324A of the Restatement 2d, as interpreted by Louisiana jurisprudence."[51] Plaintiff

---

[47] *E.g. id* ("burying, hiding, or actively concealing pollution," "failing to inform plaintiff or its predecessors that the use of unlined earthen pits on its Property seeped and leaked").

[48] *Alford,* 13 F. Supp. 3d at 594 (citations omitted)

[49] *Id.* at ¶ 42.

[50] *Withrow v. Chevron USA Inc.*, 2022 U.S. Dist. LEXIS 109949, at *12-13 (W.D. La. June 21, 2022). *See Alford,* 13 F. Supp. 3d at 600 (dismissing plaintiffs' claims for land loss, subsidence, and the cost of backfilling canals based on a substantially similar, unsupported request in the prayer for relief); *Watson,* 2018 U.S. Dist. LEXIS 203596, at *23 (dismissing these claims with prejudice).

[51] Complaint at ¶ 20.

14

claims that "[u]nder Section 324A, defendant assumed duties owed by others to the plaintiff to protect plaintiff and its Property from contamination and harm."[52]

The Louisiana Supreme Court has recognized a cause of action under Section 324A when "the defendant (1) undertakes to render services, (2) to another, (3) which the defendant should recognize as necessary for the protection of a third person.[53] The Complaint fails to state a cause of action under Section 324A as it alleges no facts supporting a claim that KMOGO agreed to perform services on behalf of another for the benefit of the Plaintiff.

In *Withrow*, this Court declined to dismiss similar claims at the pleading stage, recognizing that "Plaintiff has alleged that Defendant "has acquired other corporations or other legal entities... who otherwise assumed obligations under applicable leases or contracts, had a duty to remedy the past wrongs of those parties for whose fault or obligations they are responsible." The Complaint in this case reproduces the exact same language that does nothing more than assert a legal conclusion devoid of supporting facts. Moreover, this boilerplate allegation is inconsistent with Plaintiff's assertion that KMOGO's alleged predecessors held the applicable leases and contract during the entire period it operated on the Property. Plaintiff has not alleged any other basis for asserting liability under 324A. Accordingly, KMOGO requests that the Court dismiss Plaintiff's claims arising under Restatement 324A.

## 11. STRICT LIABILITY UNDER LOUISIANA CIVIL CODE ARTICLE 667

Plaintiff alleges that KMOGO is liable "under La. Civ. Code Art. 667 for the damages caused by its handling, storage, discharge, and disposal of toxic and hazardous and toxic oil field waste on or adjacent to plaintiff's Property."[54] Plaintiff further alleges that "Defendant's storage

---

[52] *Id.*

[53] *Bujol v. Entergy Servs.*, 03-0492 (La. 01/19/06); 922 So.2d 1113, 1145

[54] Complaint at ¶ 23.

#102134708v4

and disposal of the aforementioned toxic and hazardous substances constitutes an ultrahazardous activity for which defendant is strictly liable."[55] Art. 667 was substantively amended in 1996; thus, changing the analysis of liability to a pre-1996 and post-1996 analysis. Plaintiff fails to state a claim under both.

### a.      Post-1996 Art. 667 Claims

The Legislature amended Art. 667 in 1996 to provide that a "proprietor is answerable for damages [to his neighbor] without regard to his knowledge or his exercise of reasonable care if the damage is caused by an ultrahazardous activity. An ultrahazardous activity as used in this Article is strictly limited to pile driving or blasting with explosives."[56] Plaintiff fails to state a claim under the post 1996 version of Article 667 because: 1) Plaintiff does not allege that any KMOGO predecessor operated on the property beyond 1993, and 2) Plaintiff does not allege KMOGO engaged in "ultra-hazardous" pile driving or blasting that permits recovery without proof of negligence under Art. 667. The Court should dismiss Plaintiff's post-1996 Art. 667 claims as they cannot apply to KMOGO.

### b.      Pre-1996 Art. 667 Claims

Plaintiff further fails to state a claim against Kerr-McGee for strict liability under La. Civ. Code Art. 667 for conduct occurring prior to 1996 as it has failed to make any factual allegation that KMOGO engaged in ultrahazardous activity. Prior to 1996, Art. 667 provided "[a]lthough a proprietor may do with his estate whatever he pleases, still he cannot make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any

---

[55] *Id.*, at ¶ 35.

[56] La. Civ. Code art. 667. *See Morgan Plantation, Inc. v. Tenn. Gas Pipeline Co.*, LLC, No. 16-cv-1620, 2017 U.S. Dist. LEXIS 178782, at *11 (W.D. La. Sep. 21, 2017).

damage to him."[57] As this Court recognized in *Withrow*, parties may only recover under pre-1996 Art. 667 when the activity at issue is ultrahazardous, or that it must not require substandard conduct to cause injury.[58]

"Whether an activity qualifies as ultrahazardous in Louisiana is a question of law."[59] The Fifth Circuit has held that, as a matter of law, oil and gas exploration and production activities are not ultrahazardous.[60] The Fifth Circuit has further explained that "[i]f the activity can be conducted without a high degree of risk of injury by exercising due care, it is not ultrahazardous."[61] Plaintiff has not alleged any facts suggesting that Kerr-McGee's operations presented a high risk of injury even with the exercise of reasonable care.[62]

Notably, Plaintiff alleges the exact opposite—that defendant's alleged substandard conduct *was* the cause of the alleged injury. Plaintiff alleges that (1) the alleged contamination was caused by defendants' breach of their duty to "protect plaintiff and plaintiff's property[,]"[63] (2) Defendant failed to "properly maintain their facilities where these toxic and hazardous materials were transported, handled, stored and disposed of,"[64] and (3) Defendants failed to remove the alleged contamination

---

[57] *See Inabnett v. Exxon Corp.*, 93-0681 (La. 09/06/94); 642 So.2d 1243, 1250 (reproducing pre-1996 version of Art. 667).

[58] *Withrow*, 2022 U.S. Dist. LEXIS 109949 at *5-8. *See also Bartlett v. Browning-Ferris Indus., Chem. Servs., Inc.*, 96-218, p. 3 (La. App. 3 Cir. 11/6/96); 683 So.2d 1319, 1320–21).

[59] *Ainsworth v. Shell Offshore, Inc.*, 829 F.2d 548, 550 (5th Cir. 1987).

[60] *See Ainsworth*, 829 F.2d at 550 (holding that "drilling operations are not ultrahazardous"); *Ukudi v. McMoran Oil & Gas, L.L.C.*, 587 F. App'x 119, 122 (5th Cir. 2014)("offshore oil production is not an ultrahazardous activity."); *CNG Producing Co. v. Columbia Gulf Transmission Corp.*, 709 F.2d 959, 962 (5th Cir. 1983) (holding that natural gas operations are not ultrahazardous and acknowledging that similar types of operations "are routinely conducted . . . without incident.").

[61] *Hawkins v. Evans Cooperage Co.*, 766 F.2d 904, 907 (5th Cir. 1985).

[62] *See Ainsworth*, 829 F.2d at 550 ("We conclude that drilling operations are not ultrahazardous. We have discovered no Louisiana cases holding otherwise, and Louisiana courts routinely analyze personal injury and property damage cases arising from drilling activities under negligence principles").

[63] Complaint at ¶ 19.

[64] *Id.*, at ¶ 33.

#102134708v4

from the property.[65] Consequently, instead of alleging that substandard conduct by defendants was **not** required, Plaintiff alleges that defendants' substandard conduct **caused** the alleged damages.

Although this Court declined to dismiss the *Withrow* plaintiff's Art. 667 claims until the parties engaged in discovery, KMOGO submits that judgment on the pleadings is appropriate. Discovery cannot cure the fact that Plaintiff's pled its pre-1996 Art. 667 claim solely in relation to its claim that KMOGO improperly handled hazardous waste in connection with its oilfield activities. As explained above, these activities are not ultrahazardous as a matter of law, and therefore no amount of discovery can cure the deficiencies in Plaintiff's pre-1996 Art. 667 claim. Accordingly, KMOGO requests that the Court dismiss Plaintiff's strict liability claims arising under pre-1996 Art. 667.

## 12. MINERAL CODE ART. 11 STRICT LIABILITY CLAIMS

Plaintiff also alleges that the defendants are strictly liable under Mineral Code Art. 11 for their failure to "maintain and remediate" the Property. Art. 11 imposes correlative obligations on landowners and owners of mineral rights to "exercise their respective rights with *reasonable regard* for those of the other."[66] Thus, Art. 11 generally incorporates a standard of reasonableness, not strict liability. Similar to the cause of action under Art. 667, Art. 11 may impose liability without a showing of negligence in certain circumstances, but only for a use of the property deemed "ultrahazardous."[67] Accordingly, Plaintiff's claims for strict liability under Mineral Code Art. 11 fail for the same reasons as its claims under La. C.C. Art. 667 and should be dismissed with prejudice.[68]

---

[65] *Id.*, at ¶ 16.

[66] La. Rev. Stat. § 31:11 (emphasis added).

[67] *Id.* at cmt.

[68] Complaint at ¶ 49.

18

### 13. CONTINUING TORT, CONTINUING TRESPASS, AND CONTINUING NUISANCE

Plaintiff alleges that Defendant is liable in tort pursuant to Louisiana Civil Code article 667 and 669 under the theories of trespass and nuisance based on the allegation that "the pollution caused by defendant has migrated and will migrate in the future."[69] Plaintiff alleges that this constitutes an "ongoing and damaging nuisance" and that the *"presence* of oilfield wastes on the Property constitutes a trespass."[70] Plaintiff further states in its trespass claim that the mere "presence of oilfield wastes on the Property constitutes a trespass."[71] However, Plaintiff's Complaint alleges that Defendant's active operations on the property terminated in 1993 at the latest.[72] Under Louisiana law, such allegations do not amount to an active trespass, nuisance, or continuing tort.

In *Hogg v. Chevron,* the Louisiana Supreme Court held that contamination from oilfield operations is not the continued presence of oilfield contaminants on the plaintiff's property but rather the activities that allegedly resulted in the introduction of the contaminants onto the property that is the operating cause of the plaintiff's injury.[73] Additionally, in *Wagoner v. Chevron USA, Inc.,* the Second Circuit made clear that the failure to remediate contamination does not give rise to a continuing wrong:

> In the case *sub judice,* the alleged operating cause of the contamination on Plaintiffs' property was the use of unlined pits. Chevron's use of the pits terminated prior to 1990. Chevron's

---

[69] *Id.* at ¶ 21.

[70] *Id.* (emphasis added).

[71] *Id.*

[72] *Id.*, at Ex. B, Operator History.

[73] *Hogg v. Chevron USA, Inc.,* 2009-2632 (La. 07/06/10); 45 So. 3d 991, 1006 ("[T]he operating cause of the [plaintiffs'] injury...was the leaking underground storage tanks, not the current presence of gasoline on plaintiffs' property."). *See also Marin v. Exxon Mobil Corp.,* 09-2368 (La. 10/19/10); 48 So. 3d 234, 255 ("[T]he operating cause of the injury sued upon was the deposit and storage of oilfield wastes into unlined pits which conduct terminated when the pits were closed").

19

> failure to remediate the leakage from the pits does not constitute a continuing wrong because the failure to remediate was not the cause of the damage; the leakage was. Consequently, the continuing tort doctrine is inapplicable to this case.[74]

When determining whether a plaintiff has stated a cause of action for continuing trespass or continuing nuisance, the same analysis applies.[75]

In *Withrow*, this Court denied a similar Motion to Dismiss claims for Continuing Tort, Trespass, and Nuisance.[76] The Court based its claim on the plaintiff's argument that continuing tort claims are an issue of prescription and since *Marin* holds that as long as an oilfield pit remains "open," the torts committed by virtue of the construction or use of the pits continue. However, *Alford* explains why this reasoning fails to state a claim upon which relief can be granted:

> Plaintiffs' interpretation of *Marin* does not withstand scrutiny. In *Marin*, the defendant ceased using the pits and closed them at virtually the same time. The court used the point of closure of the pits as a convenient marker for the point at which the tortious conduct ceased; it did *not* hold that merely leaving oilfield waste in pits, without more, constitutes a continuing tort. To the contrary, *Marin* explicitly reaffirmed that "the breach of a duty to right an initial wrong simply cannot be a continuing wrong that suspends the running of prescription, as that is the purpose of every lawsuit and the obligation of every tortfeasor." Thus, the case is most naturally read to hold that a defendant's tortious conduct continues so long as it *actively deposits and stores* waste on the plaintiffs' property. Once the defendant stops actively polluting the property, the tort ceases. Any subsequent inaction is not tortious, but simply a failure to remediate harm previously caused.

*Alford* and numerous other courts have dismissed identical claims at the pleading stage and have not required a defendant to wait until the plaintiff raises a prescription defense. Accordingly,

---

[74] *Wagoner v. Chevron USA, Inc.,* 45,507 (La. App. 2 Cir. 11/24/10); 55 So. 3d 12, 25 (internal citations omitted). The Fifth Circuit has also expressly rejected Plaintiff's argument that "the failure of defendants to remove their pollution from the property" constitutes a continuing tort. *See, e.g., Kling Realty Co. v. Chevron USA, Inc.,* 575 F.3d 510, 519 (5th Cir. 2009) ("We are not persuaded that failure to clean up the contamination constitutes such a continuing physical invasion under Louisiana law").

[75] *See Hogg,* 45 So. 3d at 1003-06; *Levet v. Exxon Mobil Corp.,* 2015 U.S. Dist. LEXIS 174228 (W.D. La. Nov. 19, 2015) *adopted by* 2016 U.S. Dist. LEXIS 2628 (W.D. La. Jan. 7, 2016); *Alford v. Anadarko E&P Onshore, LLC,* 13-5457, 2014 WL 1612454, at *17, 20 (E.D. La. Apr. 22, 2014).

[76] *Withrow v. Chevron USA Inc.,* No. 2:22-CV-00633, 2022 U.S. Dist. LEXIS 109949, at *14 (W.D. La. June 21, 2022).

#102134708v4

Defendant requests that this Court dismiss Plaintiff's claims for continuing tort, continuing nuisance, and continuing trespass.

### 14. THIRD-PARTY BENEFICIARY CLAIMS

Finally, Plaintiff asserts claims as a "third party beneficiary for damages for breach of . . . mineral leases or surface leases."[77] It also claims it is "a third-party beneficiary of the assignments, subleases or other oilfield conveyance instruments, or other contracts or agreements by which the defendant acquired an interest in the oilfield equipment, wells, facilities, or property at issue," as well as to "the joint operating and unit agreements and other operating agreements pertaining to the Property."[78]

"A contracting party may stipulate a benefit for a third person called a third-party beneficiary."[79] This type of contractual provision is referred to under Louisiana law as a "stipulation *pour autrui*," which exists only if certain criteria are met.[80] "The most basic requirement of a stipulation *pour autrui* is that the contract manifest a clear intention to benefit the third party; absent such a clear manifestation, a party claiming to be a third party beneficiary cannot meet his burden of proof."[81] In the present case, as a threshold matter, Plaintiff fails to identify any contractual language that would substantiate any of the required elements of a cause of action to sue as a third-party beneficiary.[82] Accordingly, Plaintiff's claim against Defendant as a third-party beneficiary to alleged undisclosed contracts should be dismissed with prejudice.

---

[77] *Id.* at ¶ 27

[78] *Id.*

[79] La. Civ. Code art. 1978.

[80] *Zaveri v. Condor Petroleum Corp.,* 27 F. Supp. 3d 695 (W.D. La. 2014).

[81] *Id.* at 703.

[82] *See id.*

#102134708v4

## V.      CONCLUSION

For these reasons, Plaintiff has failed to plead sufficient facts to state these claims for relief against Defendant. Therefore, Defendant respectfully requests that the Court grant this motion and dismiss these claims with prejudice.

<div style="margin-left: 45%;">

Respectfully submitted,

  */s/ Meghan E. Smith*
**CHRISTOFFER  FRIEND (#1888)**
**MEGHAN E. SMITH (#34097)**
**PHILIP WOOD (#33435)**
**RACHEL SCARAFIA (#36664)**
**MARISA DEL TURCO (#40336)**
**Jones Walker LLP**
201 St. Charles Avenue, Suite 5100
New Orleans, Louisiana 70170
Telephone: (504) 582-8000
Facsimile: (504) 589-8322
cfriend@joneswalker.com
msmith@joneswalker.com
pwood@joneswalker.com
rscarafia@joneswalker.com
mdelturco@joneswalker.com

-and-



**ERIC MORVANT (#39996)**
**Jones Walker LLP**
445 North Blvd, Suite 800
Baton Rouge, Louisiana 70802
Telephone: 225/248-2000
 Facsimile: 225/248-3154
emorvant@joneswalker.com

***Counsel for Kerr-McGee Oil Gas Onshore***
***LP and Anadarko US Offshore LLC***

</div>

22

#102134708v4

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 25th day of April, 2024, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send notice of electronic filing to all counsel registered for electronic service. I further certify that I have served a copy of the foregoing pleading on all parties to this proceeding not registered for electronic service, by e-mailing, faxing, and/or mailing the same by United States mail, properly addressed and first-class postage prepaid.

*/s/ Meghan E. Smith*

#102134708v4